UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARVEL JONES,

                        Petitioner,

         -v-

STEVEN RACETTE,

                        Respondent.

15-CV-7297 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

*Pro se* Petitioner Marvel Jones has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking review of his conviction, after a non-jury trial in New York State Supreme Court, New York County, of second-degree assault and attempted first-degree assault, and his sentence to two concurrent prison terms of twenty years to life. (Dkt. No. 1 ("Petition").) On February 5, 2016 the Attorney General of the State of New York filed an opposition to the Petition. (Dkt. No. 12.) Petitioner filed a Reply on March 14, 2016. (Dkt. No. 16.) For the reasons that follow, the Petition is denied.

**I.    Background**

    **A.    The Crimes and Trial**

A New York County grand jury charged Jones with second-degree assault, N.Y. Penal Law § 120.05(2), and attempted first-degree assault, *id.* §§ 110.00, 120.10. Jones waived a jury trial and the Honorable Renee White found him guilty on February 2, 2011, of both charges. (Dkt. No. 13 at 1.) On March 30, 2011, the court sentenced Jones, as a persistent violent felony offender, to two concurrent prison terms of twenty years to life. (*Id.*) The Appellate Division, First Department, affirmed Jones' conviction, and the New York Court of Appeals denied his application for leave to appeal. *People v. Jones*, 110 A.D.3d 493 (N.Y. App. Div. 1st Dep't 2013), *leave denied*, 24 N.Y.3d 962 (2014).

The bench trial took place in February 2011. The victim and key witness, Yvette Parks, testified that she lived with her husband, Jones' younger brother, Lavaris Jones, in the home of Jones' mother in Manhattan. (Dkt. No. 14-5 at 47–49.) She testified that Jones also had lived with them in 2008 and into 2009. (*Id.* at 49.) Parks testified that Jones had problems with "drug addiction" that led to "arguing . . . fighting, [and] constant chaos in the household." (*Id.*)

Parks testified that, on February 15, 2009, Jones' mother told Jones he could no longer continue living in the home. (*Id.* at 50–53.) Parks testified that, on the same day he was evicted by his mother, Parks overheard Jones tell his brother Lavaris (Parks' husband), that Parks was a "bitch" and that Lavaris "better do something about that bitch, she's ruining my life, I'm going to get her." (*Id.* at 51.)

Two days later, around noon, Parks testified that she was speaking to a friend on her cell phone when Jones "jumped out" at her and began "scream[ing] very irately," that Parks had "ruin[ed] things for him," and that he was going to "fuck [her] up." (*Id.*) Parks recalled "a silvery item" held between Jones' fingers that she described as "flat," although she conceded that she "can't really be sure of what [she] saw." (*Id.* at 52.)

Parks testified that Jones "struck [her] in [her] face, then he hit [her] in [her] nose and the blood began to run," soaking her turtleneck sweater. (*Id.* at 51, 53.) Parks recalled that her phone flew out of her hand and "fell apart, it was in pieces." (*Id.* at 68.) She testified that she ran from Jones towards the house, but the door was locked. (*Id.* at 53.) Jones then began to punch Parks in her side as she made efforts to protect herself. (*Id.* at 54.) It was then that one of Jones' brothers appeared and Jones ran away. (*Id.* at 53.)

Police Officer David Aquino testified that he arrived on the scene after receiving a call reporting an assault. (*Id.* at 91). Officer Aquino testified that he spoke to Parks at her home, and described her as "shaken, crying" and with a "laceration to the right side of the face" as well as

"blood coming down her face . . . down to her shirt." (*Id.* at 92.)  Officer Aquino testified that Parks "kept mentioning Marvel Jones hit her with an unknown object," which she said "could have been a razor or knife" though "she didn't know what it was." (*Id.*)  Officer Aquino and his partner canvassed the area but did not locate Jones or any weapon. (*Id.* at 57–58.)

Emergency medical personnel arrived and transported Parks to a nearby hospital. (*Id.* at 55–56, 93.)  There, doctors applied liquid sutures to her wound. (*Id.* at 55.)  Parks testified that, approximately seven months later, she returned to the hospital for a lightening process to prevent dark scarring. (*Id.*)  Parks also testified that her ribs were so "badly bruised" that she had to stay in bed for a week. (*Id.* at 56.)

On cross-examination, Officer Aquino testified that he filled out an "Aided Report" worksheet in which he did not indicate the use of any weapon, instead noting only that "the complainant was punched in the face." (*Id.* at 96–97.)  Office Aquino further testified that he filled out a "complaint report worksheet," in which he again did not indicate the use of a weapon in the assault. (*Id.* at 98–99.)  Officer Aquino testified that he, in fact, checked a box on the form explicitly indicating that no weapon was used in the commission of the crime. (*Id.* at 99–100.) He also did not indicate the use of a weapon in the section titled "crime data or modus operandi," where he testified he would normally indicate the use of a weapon.  On redirect, Officer Aquino stated that he did not know what object was used and that he did not recover a weapon. (*Id.* at 64–65.)

During the cross-examination of Parks at trial, counsel for Jones sought to elicit testimony that would tend to challenge Parks' memory of that day.  For example, he asked her whether she remembered the color of the bag she was carrying as well as the type and color of the phone she was using. (*Id.* at 66–67.)  The trial court judge sustained objections to this line of questioning as not relevant. (*Id.*)

3

Throughout the cross-examination of Parks, Jones continuously interrupted the proceedings to request that he be allowed to represent himself *pro se*. After the trial court sustained an objection to counsel's question as to whether the incident "happened within the blink of an eye," Jones interjected, "Excuse me, your Honor, I object. I would like to go pro se." (*Id.* at 68.) The trial court responded that it was "not going to deal with that right now in the middle of cross-examination," and instructed counsel to continue. (*Id.* at 68–69.) Jones then requested to be removed from the courtroom, to which the trial court responded that Jones has "an absolute right to be here, but if you -- this trial will not stop." (*Id.* at 69.) In response, Jones again "request[ed] to go pro se." (*Id.*) The trial court's response was to inform Jones that he may leave the courtroom, but that trial would proceed regardless and that, instead of interrupting a cross-examination to entertain a motion to proceed *pro se*, the court would hear Jones at the conclusion of Parks' testimony. (*Id.*) Jones again responded, "I wish to go pro se." (*Id.*)

Jones renewed his request to be removed from the courtroom and to proceed *pro se* as his counsel was asking Parks about the treatment of her wound at the hospital. (*Id.* at 80–82.) Jones noted that he wanted to be removed, that he wanted to represent himself, and that he wanted to question the witness himself. (*Id.*) The trial court denied his application to represent himself at that time, and directed Jones' counsel to consult with him regarding any questions Jones desired his counsel to ask Parks. (*Id.*) Parks' testimony continued with questions from Jones' counsel. (*Id.*) After Parks stepped down, Jones repeated his request to represent himself yet again, and the trial court took a recess to allow Jones' counsel to discuss the matter with Jones. (*Id.* at 85.)

Following the recess, a court officer informed the court that Jones "decided not to join us." (*Id.*) Counsel indicated that he and Jones spoke during the recess, that Jones wished to represent himself, that Jones refused to return to the courtroom, and that he had explained to Jones that the trial would proceed in his absence. (*Id.* at 85–86.) The trial court explained that it

4

wished to "make sure his rights are fully protected" and that if it found that Jones understood the proceedings, it might allow him to represent himself. (*Id.* at 86.)

The trial court called another recess and directed counsel to speak again with Jones and to reiterate that the trial would continue in his absence if he did not return. (*Id.* at 86–87.) Jones continued to absent himself from court following this second recess. (*Id.* at 87.) Counsel for Jones again indicated that Jones wanted to represent himself and that he would appear in the courtroom. (*Id.*) Another recess was taken. (*Id.*) Jones continued to absent himself from court and the proceedings recommenced. (*Id.* at 87–89.) The People completed their case and the court broke for lunch. (*Id.* at 110.) After lunch, counsel for Jones informed the court that Jones "declined to go pro se" and that "he desired not to come back into the courtroom." (*Id.*)

During the trial the defense called no witnesses, presented no evidence, and Jones did not testify. (*Id.* at 82.)

On February 2, 2011, the court, after considering the credibility of the witnesses and the exhibits introduced into evidence, found that the People had proved beyond a reasonable doubt that Petitioner was guilty of second-degree assault and attempted first-degree assault. (*Id.* at 147–48.)

**B.     Sentencing**

For a class C violent felony (attempted first-degree assault, N.Y. Penal Law §§ 110.00, 120.10), the statutory sentencing range is sixteen years to life imprisonment for a persistent violent felony offender. *See id.* §§ 70.08(2)–(3). For a class D felony (second-degree assault, *id.* § 120.05(2)) the statutory range is twelve years to life for a persistent violent felony offender.

*See id.* §§ 70.08(2)–(3).  On March 30, 2011, the court sentenced Jones, as a mandatory violent persistent felony offender, to concurrent prison terms of twenty years to life.  (*Id.* at 162.)

      **C.**      **The Direct Appeal and *Coram Nobis* Petition**

On direct appeal to the Appellate Division, First Department, Jones presented four arguments: first, that the evidence was legally insufficient to establish that he used a weapon to inflict serious physical injury and that the verdict was against the weight of the evidence; second, that the trial court's prohibition of Jones' counsel's cross-examination of Parks regarding her recollection of the incident was prejudicial; third, that the trial court committed error through its treatment of Jones' requests to represent himself during the trial; and fourth, that the sentence imposed was excessive and should be reduced in the interest of justice.  (*See* Dkt. No. 14 at 3–58.)

On October 10, 2013, the First Department unanimously affirmed Jones' conviction, considering and rejecting each of his arguments.  *Jones*, 110 A.D.3d 493.  Jones' application for leave to appeal to the Court of Appeals was denied on September 2, 2014.  (Dkt. No. 14-1 at 21.)

Thereafter, Jones filed a *pro se coram nobis* petition, arguing that his appellate counsel was ineffective for failing to argue that trial counsel was itself ineffective.  The District Attorney opposed the motion and Jones filed a reply.  (*Id.* at 46–55; 56–65.)  The First Department summarily denied Jones' motion on December 3, 2015.  (*Id.* at 66.)  Jones' leave application to the Court of Appeals is currently pending.

      **D.**      **The Habeas Petition**

Jones filed a *pro se* habeas petition with this Court on September 9, 2015, rearguing the same four points made to the First Department in his direct appeal.  (Dkt. No. 1.)  First, Jones argues that the evidence was legally insufficient and the verdict was against the weight of the evidence.  (*Id.* at 6–8.)  Second, he argues that the trial court unduly restricted cross-examination

6

of Parks.  (*Id.* at 8–9.)  Third, he argues that the trial court erred in delaying consideration of his request to proceed *pro se*.  (*Id.* at 10–11.)  And finally, he argues that his sentence of twenty years to life was excessive and that the prosecutor improperly relied on misinformation and acquitted conduct in arguing for the maximum.  (*Id.* at 11–13.)

**II.     Discussion**

For a federal district court to grant a writ of habeas corpus under 28 U.S.C. § 2254, the Petitioner must satisfy a "'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"  *Cullen v. Pinholster,* 563 U.S. 170, 181 (2011) (citations omitted).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a federal district court may grant "a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court . . . with respect to any claim that was adjudicated on the merits in State court" if (1) the adjudication of that claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or (2) it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court's decision is "contrary to" clearly established federal law "if the state court 'applied a rule that contradicts' that precedent, or reached a different result than the Supreme Court on facts that are 'materially indistinguishable.'"  *Mannix v. Phillips*, 619 F.3d 187, 195 (2d Cir. 2010) (alterations omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).  As long as the state court decision applied the correct legal rule to the facts of a petitioner's case, it is not subject to habeas review, even if the federal court would have reached a different conclusion if it were to apply the rule itself.  *Williams*, 529 U.S. at 406.

Under most circumstances, "a federal habeas court may not reach the merits if the state court's rejection of a federal claim 'rests on a state law ground that is independent of the federal question and adequate to support the judgment.'"  *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  "This rule applies whether the state law ground is substantive or procedural."  *Coleman*, 501 U.S. at 729.

Under the AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct.  The [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  "The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."  *Parsad v. Greiner,* 337 F.3d 175, 181 (2d Cir. 2003).

A.   **Sufficiency of the Evidence and the Verdict**

Jones argues that the evidence adduced at trial was legally insufficient and that the verdict was against the weight of the evidence.  (Petition at 6–8.)

As a preliminary matter, Jones cannot prevail on his argument that the verdict was against the weight of the evidence, as "the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus."  *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011); *see also Smith v. Lee*, No. 11 Civ. 530, 2014 WL 1343066, at *10 (E.D.N.Y. Mar. 31, 2014) ("It is well settled that a 'weight of the evidence' claim is distinct from a[n] 'insufficiency of the evidence' claim and is a state claim . . . that is not reviewable in a federal habeas proceeding."  (citing *McKinnon*, 422 F. App'x at 75)).

As to Jones' claim that the evidence was legally insufficient, the Due Process Clause of the Fourteenth Amendment prohibits conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged."  *In re*

8

*Winship*, 397 U.S. 358, 364 (1970).  Petitioner is, therefore, "entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (footnote omitted).

For Jones to prevail, this Court must determine that there was legally insufficient evidence for a trier of fact to find that the prosecution proved the substantive elements of the crimes at issue as defined by state law.  *See Green v. Abrams*, 984 F.2d 41, 44–45 (2d Cir. 1993).  In evaluating the sufficiency of the evidence, this Court must "view[ ] the evidence in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319.  Indeed, the Supreme Court has "unambiguously instruct[ed] that a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Cavazos v. Smith*, 132 S. Ct. 2, 6, (2011) (per curiam) (quoting *Jackson*, 443 U.S. at 326).  A petitioner challenging the sufficiency of evidence on habeas thus bears a "very heavy burden."  *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (quoting *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993)).

Here, Jones' conviction for attempted first-degree assault requires proof that he, "with intent to commit a crime . . . engage[d] in conduct which tends to effect the commission of such crime," N.Y. Penal Law § 110.00; namely, "[w]ith intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument," *id.* § 120.10(1).  Jones' second-degree assault conviction requires proof that he, "[w]ith intent to cause physical injury," caused such injury "by means of a deadly weapon or a dangerous instrument."  *Id.* § 120.05(2).  Where a "dangerous instrument" is "any instrument [or] article" which, "under the circumstances in which it is used, attempted to be

9

used, or threatened to be used, is readily capable of causing death or other serious physical injury." *Id.* § 10.00(13). And where "physical injury" means "impairment of physical condition or substantial pain." *Id.* § 10.00(9).

In this case, the evidence adduced at trial is sufficient to support the trial court's determination that Jones committed the crimes for which he was convicted.

The trial court could have found beyond a reasonable doubt that Jones had an intent to cause serious physical injury to Parks, a finding necessary to support a conviction of attempted first-degree assault (as well as mere physical injury, which is a requisite finding for second-degree assault). Parks testified that Jones threatened to "get her" after Jones' mother kicked him out of the house. (Dkt. No. 14-5 at 49-51.) She testified that Jones followed through on that threat and that he employed the use of an object described as silvery and flat, leading to significant injury to Parks' face. (*Id.* at 51-53) Parks testified that the blood filled her sweater, that she received liquid sutures at the hospital after the incident that required a follow-up visit, and that she required a week of bedrest to heal from the bruising to her ribs caused by Jones' assault. (*Id.* at 51–56.) The alleged assault was only halted by the appearance of Jones' brother. (*Id.* at 53.) The trial court had ample evidence from which to conclude that Jones intended to seriously injure Parks, and under the deferential standard of review described in *Jackson*, this Court cannot determine that the evidence was insufficient with respect to this element.[1]

---

[1] Jones' reliance on *People v. Gilford*, 65 A.D.3d 840 (N.Y. App. Div. 1st Dep't 2009), is misplaced. Jones argues that in *Gilford* the court found that where the defendant's knife caused only "superficial" injury to the victim's abdomen, the defendant did not cause "serious physical injury" to the victim sufficient to support a conviction of first-degree assault. (Dkt. No. 16 at 10–11 (citing *Gilford*, 65 A.D.3d at 841).) But the court in *Gilford* confirmed that, as here, where the defendant's conduct "evinced an intent to cause serious physical injury," *attempted* assault in the first degree is a valid conviction. *Gilford*, 65 A.D.3d at 841.

The trial court could also have found beyond a reasonable doubt that Jones used a deadly weapon or a dangerous instrument, which is a finding necessary to support both a conviction of attempted first-degree assault and second-degree assault. In rejecting Jones' claim that the trial evidence was legally insufficient as to this element, the First Department held that "[t]he evidence supports a reasonable inference that [Petitioner] cut the victim's face with a razor blade, as opposed to merely punching her, and that he did so with the intent to cause serious physical injury." *Jones*, 110 A.D.3d at 493. This Court agrees with that determination. Parks testified that she noticed "a silvery item" that she described as "flat" (Dkt. No. 14-5 at 52), and her wounds required liquid sutures and warranted follow-up treatment (*id.* at 55). The trial court could have rationally concluded from this testimony that Jones used a dangerous instrument.

Jones' remaining arguments—including the responding officer's failure to identify the use of a weapon in the forms he used to record the incident and the failure of medical personnel to record the use of a weapon in the medical record (*see* Dkt. No. 16 at 8–9)—are unavailing as they go to the weight of the evidence, which the Court cannot consider. *See McKinnon*, 422 F. App'x at 75. In viewing the evidence in the light most favorable to the prosecution, as this Court is required to do, the trial court could have found the essential elements of both crimes beyond a reasonable doubt. *See Cavazo*, 132 S. Ct. at 6.

  **B.**  **Cross-Examination of Park**

Jones' second alleged ground for habeas relief is that the court erred in precluding Jones' counsel from questioning Parks regarding the color of her cellphone to support Jones' theory that Parks' memory was unreliable or that the object in Jones' hand during the assault was a fragment of the cell phone and not a razor blade or knife. (Dkt. No. 1 at 8–9.)

The First Department refused to address these claims. It held that, because Jones "made an offer of proof at trial that was completely different from the theory of relevance he asserts on

11

appeal, his claim that the court unduly restricted his cross-examination of the victim is unpreserved." *Jones,* 110 A.D.3d at 493.  The First Department further found that "Defendant's constitutional argument is unpreserved for the same reason, as well as the additional reason that defendant never asserted a constitutional right to pursue the line of inquiry at issue." *Id.*

"[W]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review."  *Cone v. Bell*, 556 U.S. 449, 465 (2009).  However, a "'state law ground is only adequate to support the judgment and foreclose review of a federal claim if it is firmly established and regularly followed in the state,' and application of the rule would not be 'exorbitant.'"  *Bierenbaum v. Graham*, 607 F.3d 36, 47 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Garvey v. Duncan*, 485 F.3d 709, 713-14 (2d Cir. 2007)).  A state court's finding of procedural default "will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'"  *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations omitted); *see Gutierrez v. Smith*, 702 F.3d 103, 111-12 (2d Cir. 2012).

The First Department's refusal to consider Jones' claim based on his failure to present a theory of relevance on appeal that was consistent with the offer of proof at trial, "is well settled under New York law," which instructs "that the failure to specifically alert a trial court to the basis for an objection—including making an offer of proof where required—bars appellate review."  *Rivera v. Miller*, No. 2 Civ. 6773, 2003 WL 21321805, at *14 (S.D.N.Y. June 10, 2003); *see Jones,* 110 A.D.3d at 493 (citing *People v. Brown*, 298 A.D.2d 176 (N.Y. App. Div. 1st Dep't 2002)).

12

And even if this Court were to consider this claim, there was no error in the First Department's alternative holding that Jones "was not deprived of his right to cross-examine witnesses and present a defense." *Jones,* 110 A.D.3d at 493 (citing *Crane v. Kentucky*, 476 U.S. 683, 689–90 (1986); *Delaware v. Van Arsdall*, 475 U.S. 673, 678–79 (1986)). The alternative merits determination by the First Department is, in any event, binding on this Court on habeas review unless contrary to, or an unreasonable application of, federal law as decided by the Supreme Court. 28 U.S.C. § 2254(d)(1); see *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (noting that in order to obtain habeas corpus from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

A criminal defendant, under federal law, is entitled to present a defense that includes "the basic right to have the prosecutor's case encounter and 'survive the crucible of meaningful adversarial testing.'" *Crane*, 476 U.S. at 690–91 (quoting *United States v. Cronic*, 466 U.S. 648, 656 (1984)). This includes the right to confrontation of opposing witnesses so as "*to secure for the opponent the opportunity of cross-examination.*" *Van Arsdall*, 475 U.S. at 678 (quoting *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974)) (internal quotation mark omitted).

But "[i]t does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits," including the imposition of "reasonable limits on . . . cross-examination based on concerns about, among other things, . . . interrogation that is . . . only marginally relevant." *Id.* at 679; see also *Michigan v. Lucas*, 500 U.S. 145, 149 (1991); *Crane*, 476 U.S. at 690 (1986). Here, the trial court sustained objections to questions regarding the color of the bag Parks was carrying as well as the type and color of the phone Parks was using. (Dkt. No. 14-5 at 66–67.) The trial court explicitly noted

13

that such information was "irrelevant." (*Id.* at 66.) Counsel for Jones was afforded a reasonable opportunity to question Parks concerning all other relevant details surrounding the case. (*See generally id.* at 61–85.)

"Combining the standard for restricting cross-examination with the AEDPA standard, in order to grant [a] habeas petition we would have to conclude not only that the trial court abused its 'broad discretion' by precluding cross-examination . . . but also that the Appellate Division could not reasonably have determined that the [evidence] would have been excludable had the trial court properly applied 'standard rules of evidence concerning admissibility'" *Watson v. Greene*, 640 F.3d 501, 510 (2d Cir. 2011) (quoting *Wade v. Mantello*, 333 F.3d 51, 62 (2d Cir. 2003)). The Court cannot so conclude.

### C.   Jones' Request to Proceed *Pro Se*

Jones' third ground for habeas relief is that the trial court erred in delaying consideration of his request to proceed *pro se*. (Dkt. No. 1 at 10–11.) The First Department found that Jones "did not properly preserve his claim that the court erred in delaying its consideration of his request to proceed pro se—asserted for the first time during cross-examination of the victim—until after the victim's testimony had concluded." *Jones*, 110 A.D.3d at 493. Moreover, it found that Jones "abandoned [his claim to represent himself] when, through counsel, [Jones] withdrew his request to represent himself." *Id.* For the reasons discussed above, the First Department's finding of procedural default "bar[s] federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Harris*, 489 U.S. at 262 (1989) (citations omitted).

Here, the First Department relied on both preservation and abandonment, each of which is an independent and adequate state procedural rule that bars habeas relief. *See Kemp v. New*

14

*York*, No. 07 Civ. 6996, 2009 WL 306258, at *9 (S.D.N.Y. Feb. 9, 2009) ("The Second Circuit has recognized that New York's preservation rule typically constitutes an independent and adequate state procedural ground on which the Appellate Division may deny a criminal defendant's appeal.") (citing *Garcia v. Lewis*, 188 F.3d 71, 76–77, 79 (2d Cir. 1999)); *Bailey v. Ercole*, No. 6 Civ. 5811, 2007 WL 4707738, at *8 (S.D.N.Y. Aug. 17, 2007) ("As a procedural mechanism, abandonment is firmly established and regularly enforced in New York courts.").

In any event, Petitioner fails to establish a violation of his Sixth Amendment right to represent himself. *See Faretta v. California*, 422 U.S. 806, 819–20 (1975) ("The right to defend is given directly to the accused . . . ."). The Second Circuit has made clear that "the right to proceed *pro se* 'is unqualified only if exercised before the commencement of trial.'" *United States v. Matsushita*, 794 F.2d 46, 51 (2d Cir. 1986) (quoting *United States v. Brown,* 744 F.2d 905, 908 (2d Cir. 1984)). "After a trial has begun, a criminal defendant's right to represent himself 'is sharply curtailed.'" *United States v. Pickett*, 34 (2d Cir. 2010) (quoting *United States v. Stevens,* 83 F.3d 60, 67 (2d Cir.1996)). When asserted during trial, "[t]he prejudice to the legitimate interests of the defendant must be balanced against the potential disruption of the proceedings in progress." *Matsushita*, 794 F.2d at 51.

"In weighing the prejudice to the legitimate interests of the defendant, the court should consider 'the defendant's reasons for the self-representation request, the quality of counsel representing the party, and the party's prior proclivity to substitute counsel.'" *Pickett*, 387 F. App'x at 34 (quoting *Matsushita*, 794 F.2d at 51)). Here, the trial court considered Jones' reason for self-representation—his desire to pose certain question to Parks—and allowed Jones an opportunity to convey those question to his counsel. (Dkt. No. 14-5 at 80–81.) After Parks' testimony, the trial court sought to provide Jones an opportunity to present additional arguments

on the matter, but Jones continued to absent himself from the courtroom until his attorney informed the trial court that Jones declined to go pro se. (*Id.* at 85–89.)

The trial court did not improperly delay its consideration of Jones' request to represent himself, made for the first time during the cross-examination of a key witness and abandoned after the close the State's case. The trial court explicitly addressed Jones' stated concerns regarding questions he desired put to the witness and provided an appropriate time and place for Jones to fully raise and discuss his motion to represent himself. The right to self-representation "is not a license to abuse the dignity of the courtroom," and *Clark v. Perez*, 510 F.3d 382, 395 (2d Cir. 2008) (quoting *Faretta*, 422 U.S. at 834 n.46)). Jones' claim for relief on this ground is denied.

### D. Sentencing

Finally, Jones argues that his concurrent sentences of twenty years to life are excessive and that the court improperly relied on misinformation about Jones' prior criminal history in imposing the sentence. (Dkt. No. 1 at 11–13.)

First, challenges to the term of a sentence are not cognizable on habeas review if the sentence falls within the statutory range, unless they raise an issue of federal or constitutional law. *See, e.g.*, *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992). Jones received concurrent sentences of twenty years to life. He does not argue that the sentence falls outside of the statutory range. Accordingly, the excessive sentence claim fails. *See John v. Griffen*, No. 13 Civ. 922, 2014 WL 866277, at *15 (S.D.N.Y. Mar. 4, 2014) ("Because Petitioner's underlying sentence did not exceed the maximum prescribed, Petitioner's excessive sentence claim is inappropriate for habeas relief."). The claim for relief on this ground is denied.

As to Jones' claim that the prosecutor relied on incorrect information about his prior criminal history, the First Department found that "[t]he record does not establish that defendant's sentence was based on any improper criteria" and "perceive[d] no basis for reducing the sentence." *Jones*, 110 A.D.3d at 493–94.  Jones here argues that the "prosecutor stretched the truth when he encouraged the court to rely on what he characterized as two additional violent crimes, even though one was not classified as violent, and the other was never proven at trial." (Dkt. No. 1 at 12.)  In its opposition, the State admits that the misdemeanor assault for which Jones was convicted is not a "violent" assault under the state sentencing scheme, but argues that the prosecutor was instead using the term "violent" in its colloquial sense, in which "any assault is a 'violent' crime." (Dkt. No. 13 at 29.)

It is certainly the case that, under New York law, a sentencing court may not consider conduct for which a defendant has been acquitted.  *See People v. Varlack*, 259 A.D.2d 392, 394 (N.Y. App. Div. 1st Dep't 1999); *People v. Coward*, 100 A.D.2d 628, 628 (N.Y. App. Div. 2d Dep't 1984).  Moreover, "[m]isinformation or misunderstanding that is materially untrue regarding a prior criminal record, or material false assumptions as to any facts relevant to sentencing, renders the entire sentencing procedure invalid as a violation of due process." *United States v. Malcolm*, 432 F.2d 809, 816 (2d Cir. 1970).  But the statements by the prosecutor were not materially untrue and the trial court was entitled to consider information regarding charged and pending conduct in determining an appropriate sentence.  *See People v. Gonzalez*, 242 A.D.2d 306, 306–07 (App. Div. 2d Dep't 1997) ("It was within the court's discretion to consider the defendant's prior criminal history, including crimes for which he has never been tried or convicted as long as the information regarding such crimes was reliable and accurate" (citations omitted)).  Simply put, "the sentencing proceedings [were not] so permeated with improper considerations and prejudicial references as to deprive the defendant of due

17

process of law." *People v. Bejarano*, 287 A.D.2d 727, 727–28 (App. Div. 2nd Dep't 2001).  The claim for relief on this ground is denied.

### III.   Conclusion

For the foregoing reasons, the Petition is DENIED.  The Clerk of Court is directed to close this case.

SO ORDERED.

Dated:  December 12, 2016
        New York, New York

_____
J. PAUL OETKEN
United States District Judge


COPY MAILED TO *PRO SE* PARTY BY CHAMBERS.